UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No.: |
| v. | ) | 14-cr-00025 |
| | ) | |
| FREEMAN EUGENE JOCKISCH | ) | |

## DEFENSE MOTION FOR CERTIFICATION AND/OR NOTIFICATION OF CONSTITUTIONAL CHALLENGE TO STATUTE, PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 5.1

COMES NOW, the accused in the above styled action, FREEMAN EUGENE JOCKISCH in PRO-SE, and hereby declares to this court that he is exercising his Constitutional right to challenge an unconstitutional statute based on the premise that the statute was enacted in contravention of basic federalist principles. The defendant moves this court to CERTIFY this [his] challenge to a Constitutional question, and execute this [his] motion as required by Fed. R. Civ. P., Rule 5.1. In support, the accused shows the court the following:

### a) JURISDICTIONAL STATEMENT

1) This court has jurisdiction to execute this motion filed by the defendant in PRO-SE, and to allow a liberal construction of this pleading, giving to the accused what he wants even if it is not clearly stated in his pleading, pursuant to Haines v. Kerner.

2) The defendant in this case has a Constitutional right to be heard, protected by the 5th Amendment's due process clause, and the right to petition this court for a redress of grievances, pursuant to the 1st Amendment of the United States Constitution.

b) <u>RIGHTS OF THE ACCUSED TO CHALLENGE STATUTE, AS HELD IN UNITED STATES SUPREME COURT IN BOND v. UNITED STATES</u>

1) The United States Supreme Court decision in <u>Bond v. United States</u>, 564 U.S., 131 S. Ct., 180 L Ed 2d 269, 2011 U.S. Lexis 4558, which states in the Annotation References the following:

   A) Supreme Court's view as to validity of federal legislation under Tenth Amendment, providing that powers not delegated to United States by Constitution nor prohibited by it to the states are reserved to the states or to the people.

   B) Requirements of Article III of Federal Constitution as affecting standing to challenge particular conduct as violative of federal law-Supreme Court cases. 70 L. Ed. 2d 941.

   C) Supreme Court's view as to what is a "case or controversy" within the meaning of the Declatory Judgment Act (28 U.S.C. § 2201). 40 L. Ed. 2d 783.

2) The United States Supreme Court decision of <u>Bond v. United States</u>, 564 U.S., 131 S. Ct., 180 L Ed 2d 269, 2011 U.S. Lexis 4558, which states in its Headnotes the following:

   A) A defendant's challenge to a conviction and sentence satisfies the case-or-controversy requirement, because incarceration constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction.

   B) An individual, in a proper case, can assert injury from governmental action taken in excess of the authority that federalism defines. Her rights in this regard do not

2                                                    Initials: _F.E._

belong to a state.

C) Federalism has more than one dynamic.  It is true that the federal structure serves to grant and delimit the prerogatives and responsibilities of the states and the national government vis-a-vis one another.  The allocation of powers in the federal system preserves the integrity, dignity, and residual sovereignty of the states.  The federal balance is, in part, an end in itself, to ensure that states function as political entities in their own right.  But that is not its exclusive sphere of operation.  Federalism is more than an exercise in setting the boundary between different institutions of government for their own integrity.  State sovereignty is not just an end in itself:  Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power.  Some of these liberties are of a political character.

D) Federalism protects the liberty of all persons within a state by ensuring that laws enacted in excess of delegated governmental power cannot direct or control their actions.  By denying any one government complete jurisdiction over all concerns of public life, federalism protects the liberty of the individual from arbitrary power.  When government acts in excess of its lawful powers, that liberty is at stake.

E) The limitations that federalism entails are not a matter of rights belonging only to the states.  States are not the sole intended beneficiaries of federalism.  An individual has a direct interest in objecting to laws that upset the constitutional balance between the national government and the states when the enforcement of those laws causes injury that is concrete, particular, and redressable.  Fidelity to principles of federalism is not

Initials: _FSL_

for the states alone to vindicate.

F) If the constitutional structure of the United States Government that protects individual liberty is compromised, individuals who suffer otherwise justiciable injury may object.

G) The principles of limited national powers and state sovereignty are intertwined. While neither originates in the Tenth Amendment, both are expressed by it. Impermissable interference with state sovereignty is not within the enumerated powers of the national government, and action that exceeds the national government's enumerated powers undermine the sovereign interests of the states. The unconstitutional action can cause concomitant injury to persons in individual cases.

H) An individual who challenges federal action on federalism grounds is, of course, subject to the U.S. Const. art. III requirements, as well as prudential rules, applicable to all litigants and claims. Individuals have no standing to complain simply that their government is violating the law. It is not enough that a litigant suffers in some indefinite way in common with people generally. If, in connection with the claim being asserted, a litigant who commences suit fails to show actual or imminent harm that is concrete and particular, fairly traceable to the conduct complained of, and likely to be redressed by a favorable decision, the federal Judiciary cannot hear the claim. These requirements must be satisfied before an individual may assert a constitutional claim; and in some instances, the result may be that a state in the only entity capable of demonstrating the requisite injury. However, where the litigant is a party to an otherwise justiciable case or controversy, she is not forbidden to object that her injury results from disregard of the feder-

al structure of the United States Government. Whether the Tenth Amendment is regarded as simply a "truism", or whether it has independent force of its own, the result is the same.

3) The Syllabus of <u>Bond v. United States</u>, 564 U.S., 131 S. Ct., 180 L Ed 2d 269, 2011 U.S. Lexis 4558, states the following:

   A) The individual, in a proper case, can assert injury from governmental action taken in excess of the authority that federalism defines. Her rights in this regard do not belong to a State

   B) The federal system rests on what might at first seem a counterintuitive insight, that "freedom is enhanced by the creation of two governments, not one." <u>Alden v. Maine</u>, 527 U.S. 706, 758, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999). The Framers concluded that allocation of powers between the National Government and the States enhances freedom, first by protecting the integrity of the governments themselves, and second by protecting the people, from whom all governmental powers are derived.

   C) Federalism has more than one dynamic. It is true that the federal structure serves to grant and delimit the prerogatives and responsibilities of the States and the National Government vis-a-via one another. The allocation of powers in our federal system preserves the integrity, dignity, and residual sovereignty of the States. The federal balance is, in part, an end in itself, to ensure that States function as political entities of their own right.

   D) Federalism also protects the liberty of all persons within a State by ensuring the laws enacted in excess of delegated governmental power cannot direct or control their actions. See ibid. By denying any one government complete juris-

5                                                          Initials: _FEJ_

diction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power. When government acts in excess of its lawful powers, that liberty is at stake.

E) The premise that petitioner does or should avoid making an "interference-with-sovereignty" argument is flawed. Id., at 33. Here she asserts, for example, that the conduct with which she is charged is "local in nature" and "should be left to local authorities to prosecute" and that congressional regulation of that conduct "signals a massive and unjustifiable expansion of federal law enforcement into state-regulated domain." Record in No. 2:07-cr-00528-JG-1 (ED Pa.), Doc. 27, pp. 6, 19. The public policy of the Commonwealth of Pennsylvania, enacted in its capacity as sovereign, has been displaced by that of the National Government. The law to which petitioner is subject, the prosecution she seeks to counter, and the punishment she must face might not have come about if the matter were left to the Commonwealth of Pennsylvania to decide. Indeed, petitioner argues that under Pennsylvania law the expected maximum term of imprisonment she could have received for the same conduct was barely more than a third of her federal sentence.

There is no basis to support the Government's proposed distinction between different federalism arguments for purposes of prudential standing rules. The principles of limited national powers and state sovereignty are intertwined. While neither originates in the Tenth Amendment, both are expressed by it. Im-permissable interference with state sovereignty is not within the enumerated powers of the National Government, see New York, 505 U.S., at 155-159, 112 S. Ct. 2408, 120 L. Ed. 2d 120, and action that exceeds the National Government's enumerated powers undermines the sovereign interests of States.

Initials: _[signature]_

See <u>United States v. Lopez</u>, 514 U.S. 549, 564, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995). The unconstitutional action can cause concomitant injury to persons in individual cases.

F) In this case, however, where the litigant is a party to an otherwise justiciable case or controversy, she is not forbidden to object that her injury results from disregard of the federal structure of our Government. Whether the Tenth Amendment is regarded as simply a "'truism'" New York, supra, at 156, 112 S. Ct. 2408, 120 L. Ed. 2d 120 (quoting <u>United States v. Darby</u>, 312 U.S. 100, 124, 61 S. Ct. 451, 85 L. Ed. 609 (1941)), or whether it was independent forces of its own, the result here is the same.

G) In short, a law "beyond the power of Congress," for any reason, is "no law at all." <u>Nigro v. United States</u>, 276 U.S. 332, 341, 48 S. Ct. 388, 72 L. Ed. 600 (1928).

c) <u>**PARTICULARIZED CHALLENGE TO 18 U.S.C. § 2422(b)**</u>

The accused hereby avers that the statute 18 U.S.C. § 2422(b) is unconstitutional based on the premise that Congress exceeded its powers by enacting the statute in contravention of basic federalism principles, in that:

1) The statute, 18 U.S.C. § 2422(b), employs words of a broad and sweeping nature such as "Whoever" and/or "Any Person" as found in 18 U.S.C. § 2252(a), "Who knowingly...", "Interstate Commerce...". The use of these words in such a broad nature is clearly a clever attempt to usurp a greater jurisdiction, not enumerated by the Constitution, by the misuse of the commerce clause in an effort to bestow a police power upon the national government.

7

Initials: _JEJ_

2) The term "Any Person" is not a defined term in Chapter 117 of the Code, which contains Section 2422, that does not have a definition section. Other Titles of the United States Code defines a person as a corporation or partnership (e.g. Title 5 U.S.C. § 551(2) and/or Title 15 U.S.C. § 7), which could be an absurdity to charge with a statute criminalizing "Any sexual activity...", which also is not defined in Title 18 anywhere. It is also ridiculous to believe that Congress has the authority to pass legislation that regulates the conduct of any person in interstate commerce in **CHINA**, even though the statute does not preclude the exercise of police powers in other countries. See United States v. Taylor, (7th Cir.), April 7. 2011. Case No. 10-2715.

3) As we can clearly see, Congress employed the words "Interstate Commerce" to validate their attempt to encompass **"ANY PERSON"**. This would, if possible and legal, break the bonds of Constitutional limitations of this statute to pertain to federal territory in some way; see United States v. Ballinger, 312 F.3d 1264, 1271 (11th Cir., 2002) "To allow Congress to regulate local crime on a theory of its aggregate effect on the national economy would give Congress a free hand to regulate any activity, since, in the modern world, virtually all crimes have at least some attenuated impact on the national economy." Also see: United States v. McCoy (9th Cir., 2003); United States v. Lopez; United States v. Morrison, 529 U.S. 598, 146 L. Ed. 2d 658, 120 S. Ct. 1740 (2000); United States v. Stewart; Bond v. United States (3rd Cir., 2014)

4) On many occasions, judges claim that the mere possession of an item that previously traveled through interstate commerce invokes federal authority. However, it is clearly stated in United States v. Stewart, "In United States v. McCoy, 323 F.3d 1114 (9th Cir., 2003), we confronted a similar line-drawing problem. McCoy held that a statute criminalizing possession of child pornography was unconstitutional as ap-

Initials: *IEQ*

plied to a woman who posed nude with her child for her husband's camera. The photographs were intended only for home use. The statute contained a jurisdictional element allowing prosecutions even when the pornographic material "was produced using materials which have been mailed or...shipped or transported" in interstate commerce, 18 U.S.C. § 2252(a)(4)(B); this would seem to include any of the film, paper, cameras, computers, or other technology needed to produce pornographic images. However, because "'all but the most-sufficient child pornographers will rely on film, cameras, or chemicals that traveled in interstate commerce,'" McCoy, 323 F.3d 1125 (quoting United States v. Rodia, 194 F.3d 465, 473 (3d Cir. 1999)), McCoy held that the jurisdictional element "provided no support for the government's assertion of federal jurisdiction," id. at 1126. McCoy thus recognized that, just because certain of the elements that make up an object traveled interstate at one time or another, this does not necessarily mean Congress can regulate that object under the Comemrce Clause.

5) At some level, everything owned is composed of something that once traveled in Commerce. This cannot mean that everything is subject to federal regulation under the Commerce Clause, else that Constitutional limitations would be entirely meaningless. Congress's power has limits, and courts must be mindful of those limits so as not to obliterate the distinction between what is national and what is local and create a completely centralized government.

6) The statute 18 U.S.C. § 2422(b) was enacted in violation of 18 U.S.C. § 3553, which states in part that a sentence must be imposed as not to create a sentencing disparity. It is clear that much of this statute to include, but not limited to, "enticing a minor..." is a Class "B" felony in most states, and is punishable by probation, e.g. Alabama Code of 1975, Section 13A-6-121 (enacted 2009). The act forementioned here contains the jurisdictional statement 13A-6-126 which states,

9                                    Initials: _FEL_

"For purposes of determining jurisdiction of this Article, the offense is committed in this state in any of the acts committed under Sections 13A-6-121, 13A-6-122, and 13A-6-123 either originate in or are received in this state. The purpose of this section is to confer jurisdiction upon the courts of this state to the maximum extent allowable under the Constitution of the United States of America and the Constitution of Alabama of 1901.

7) The Tenth Amendment states, "The powers not delegated to the United Stastes by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

8) Anyone can see either the federal statute or the state statute is unconstitutional, the Tenth Amendment states it is the federal statute that is unconstitutional.

WHEREFORE, premises considered, the accused hereby moves this court to do its Judicial duty as required by Fed. R. Civ. P., Rule 5.1, and certify this Constitutional question in support of the Constitution of the UNITED STATES OF AMERICA. The defendant moves this court to grant this motion, all herein, and all other relief required by LAW, LIBERTY, and EQUITY.

Done This 14th Day of November, 2014

Respectfully Submitted,

x _Freeman Eugene Jockisch_
Freeman Eugene Jockisch, PRO-SE
08584-003
Federal Correctional Institution
P.O. Box 5000
Oakdale, LA 71463

10                                              Initials: F.E.J.

## CERTIFICATE OF SERVICE

I, the undersigned, have served a copy of this Constitutional challenge, VIA U.S. MAIL, properly addressed, First-Class Postage prepaid, to the following interested parties:

1) Clerk of Court; John A. Campbell Courthouse; 113 St. Joseph Street; Mobile, Alabama 36602; and request forwarding to all parties VIA the CM/ECF System.

2) United States Attorney General; 950 Pennsylvania Avenue Northwest; Washington, D.C. 20530.

Done This 14th Day of November, 2014

Respectfully Submitted,

x *Freeman Eugene Jockisch*
Freeman Eugene Jockisch, PRO-SE
08584-003
Federal Correctional Institution
P.O. Box 5000
Oakdale, LA 71463

Initials: FEJ

# Charges Dismissed Against Former Child Sex Crimes Prosecutor For Lack Of Actual Minor In FBI Sting

1, December 7, 2012 by jonathanturley



There is an interesting ruling out of Mobile, Alabama where former child sex crimes prosecutor, Steve Giardini, was charged with solicitation of a minor over the computer. Special Judge Gaines McCorquodale dismissed the charge on a key missing element under the statute: an actual victim. Since Giardini was speaking with an undercover officer posing as a 15-year-old girl, McCorquodale ruled that there was no victim as required under the language of the statute for child enticement. Essentially, no child, no enticement, no charge.

According to the FBI agent, the agent assumed the identity of a teenage girl named Daphne. The agent said in the affidavit Giardini said that he wanted to meet the girl and that the two discussed the importance of not getting caught by her mother. This included conversations over the phone with the agent using a voice changing technology. The agent said that Giardini asked the girl if she had ever had sex and invited her to use the swimming pool and hot tub at his home and that they could go to the beach at Perdido Key in Florida. The agent also said that Giardini asked her to take off her clothes and masturbate so that he could hear as well as asking her to take a topless photo once her mother was gone.

Giardini had already been tried on the charges, which resulted in a hung jury. The split was not particularly close — 7-5.

McCorquodale noted that "[t]he issue becomes whether or not that statute can be applicable to an undercover agent purporting to be a fifteen (15) year old female child." A state appellate court had previously dismissed a case based on the same problem and the judge followed the same reasoning. He also dismissed a related charge of solicitation of obscene matter of a child on the same grounds. He found that "the state is faced with the issue that there is no actual victim in the case. As a result, there was no actual production of any

photograph or attempted production of any photograph of breast nudity of a child under the age of sixteen (16). That evidence is undisputed here."

Giardini was a 20-year veteran who was prosecuting child sex offenses when he was nabbed in the sting operation. He was accused of having an almost four-month-long correspondence with the "child". He resigned after the FBI searched his home.

The question is whether Giardini will now be charged by federal prosecutors. Like other areas, Congress has created dual state-federal crimes for online solicitation. Many civil libertarians have objected in the past that acquittals in state court are followed by basically the same charge in federal courts. Yet, federal courts have refused to enforce double jeopardy protections in such cases.

This would be a bit different since, while tried earlier to a hung jury, Giardini secured dismissal on a legal question.

Giardini's lawyer argues that the ex-prosecutor had long conversations with many other counterparts, mostly adults. He insists that a request for a topless photo was unclear — an argument supported by the earlier hung jury. Yet, it is not clear, if the agent is telling the truth, how many adults were asked to avoid their mothers and discuss whether they were virgins.

The question is now whether such allegations should strip Giardini of his bar license even without federal charges. If the agent's affidavit is to be believed, Giardini encouraged a 15-year-old girl to avoid her mother, take topless photos, and visit him without parental consent. If the bar believes the allegations, I would find it hard to be convinced that he could serve as an attorney and officer of the court.

Source: WKRG

⇔08584-003⇔
Freeman Jockisch
Reg. #08584-003 (V2)
Federal Correctional Institution
P.O. Box 5000
Oakdale, LA 71463
United States

Special mail

"Legal MAIL"



⇔08584-003⇔
John A Campbell
U.S. Court House
113 Saint Joseph ST
Mobile, AL 36602
United States