## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIM. NO. 14-00025-CG-B |
| | ) | |
| FREEMAN EUGENE JOCKISCH | ) | |

### UNITED STATES'S RESPONSE TO 28 U.S.C. § 2255 MOTION

Comes now the United States of America, by and through Richard W. Moore, the United States Attorney for the Southern District of Alabama, and responds to petitioner Freeman Eugene Jockisch's *pro se* motion under 28 U.S.C. § 2255. Doc. 80. Jockisch raises four frivolous grounds of ineffective assistance of counsel, due to be denied without an evidentiary hearing.[1]

Jockisch's claims primarily stem from a one and one-half day trial, where he was convicted of one count of using the Internet to "attempt to persuade, induce, entice and coerce" a minor "to engage in criminal sexual activity," in violation of 18 U.S.C. § 2422(b). Docs. 1, 28, 60. He was convicted on the strength of incriminating e-mail evidence and his confession to law enforcement. That conviction, and his 120-month sentence, were affirmed upon appeal to the Eleventh Circuit Court of Appeals in a descriptive 31-page published opinion, which rendered detailed findings of fact and

---

[1] The motion appears to be missing pages after pages 4, 8, and 11, but the clerk's office confirmed to the undersigned that it docketed the motion as received by Jockisch.

conclusions of law.   Doc. 72.   That opinion establishes the law-of-the-case in this proceeding.   *See, e.g., United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996) (under this doctrine, "[a]n appellate decision binds all subsequent proceedings in the same case not only as to explicit rulings, but also as to issues decided necessarily by implication on the prior appeal.").   This timely motion followed.

## A.   Jockisch's *Strickland* Burden

This Court is well-familiar with the governing high burden spelled out in *Strickland v. Washington*, 466 U.S. 668 (1984), where Jockisch must demonstrate that his counsel rendered deficient performance in violation of the Sixth Amendment that sufficiently prejudiced his defense.   *See id.* at 687 ("First, the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense. . . .   Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Weeks v. Jones*, 26 F.3d 1030, 1036 (11th Cir.), *cert. denied*, 513 U.S. 1193 (1995).

Jockisch makes three vague claims, unsupported factually and legally, that his trial counsel was ineffective, and one claim pertaining to appellate counsel.   As to his trial counsel, he asserts that counsel "failed to adequately familiarize himself with the

charging statute," Doc. 80 at 4-7 (ground one); that counsel "failed to realize" the evidence was insufficient "to support the jury's verdict of guilt," *id.* at 8-10 (ground two); and that counsel "failed to raise an obvious error in jurisdiction," *id.* at 11-13 (ground three). He also alleges that his appellate counsel "failed to raise the meaningful errors in the record rather than the sure losers he did raise" on appeal. *Id.* at 14-16.

1. <u>Ground One: Lack of "Familiarity" with the Charging Statute, Etc.</u>

While difficult to follow, Jockisch writes that his trial counsel's "ignorance of law" led to him being "convicted of no criminal conduct," because it was an undercover officer who "initiated" the communication via the Internet, not Jockisch. *Id.* at 4. He seems to argue that the facts presented against him at trial were insufficient to convict under § 2422(b), yet he offers nothing specific that his counsel should have or should not have done, and offers no controlling law that his counsel did not heed or marshal to his benefit. *See, e.g., Moreno v. Sec'y, Dept. of Corrections*, 2012 WL 2282552, *6 (M.D.Fla. 2012) ("In reality, Defendant seems to be using his [motion] to improperly raise a claim of sufficiency of the evidence under the guise of ineffective assistance of counsel."). As to facts, he states that he "did in fact end the conversation with the alleged girl after discovering that she was only 15" and later "assumed that the fictitious girl had turned 16. . . ." *Id.* at 5-6 (and also "believed" that the girl was "the age of consent" in Alabama). As to the law, he attempts in his own self-serving way to parse what he believes is required by the statute, but his claim is incoherent and he provides no legal

support for it, nor does he explain specifically why or how the evidence presented against him was insufficient to convict. *See, e.g., id.* at 5 (complaining about the structure of the statute's "stand-alone residual clause," questioning the governing "age of consent" in either the federal realm or Alabama, and claiming that he is "actually innocent.").

It is difficult to make sense of this claim. But whatever he specifically means by it, the record in Jockisch's case belies any suggestion that there were insufficient facts to convict or that those facts did not fit comfortably within what is required of § 2422(b). But more to the point, Jockisch makes no showing of ineffective assistance of counsel, where counsel has little control over facts properly admitted at trial against his client and does not control what the law is. For several reasons, the claim is due to be denied.

At the outset, the Eleventh Circuit Court of Appeals already rendered findings of fact in this case, which inform the decision here and cannot be reconciled with Jockisch's own view of the evidence. *See, e.g., Tamayo*, 80 F.3d at 1520. The law-of-the-case doctrine "operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication in a prior appeal." *Sciavo ex rel. Schindler v. Shiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005). After a review of the record, the circuit court thoroughly described the evidence presented against Jockisch at trial, and he does not offer any other particular, credible, supportable, admissible, and available "facts" that,

if presented on his behalf, would have undermined any of it.  That evidence is quoted

from the "Factual Background" section of the opinion:

> On July 2, 2013, Officer James Morton, posing as a 15-year-old girl named "Sara," posted a personal ad on Craigslist's "casual encounters" page.  The ad, titled "BORED TO TEARS – w4m," [footnote: The abbreviation "w4m" is shorthand for "woman seeking a man."] stated, "I'm bored and everyone is out of the house till Saturday.  So you can like hit me [up] or whatever.  I may have a friend come over and hang but it aint the same."  Within a half hour, Defendant replied to Sara's ad, "SEND ME A PICTURE AND LETS DO IT, OK."  Sara responded one minute later, "hey. do you have like a pic 2?"  Defendant sent Sara a photo of himself.

> Defendant then insisted that Sara send him a photo of herself.  Sara initially ignored Defendant's demands.  She also told Defendant that her family was out of town for the week and that she was home alone.  Sara then sent Defendant a head shot.  Defendant asked Sara, "do you want me to make love to you[?]"  When Defendant suggested that they meet up, Sara told Defendant that she could not drive because she was only 15 years old.  Defendant then told Sara that she is a "pretty lady" and that he would "make her feel goo[d]."  Sara asked Defendant how he would make her feel good, and he responded, "by making love to you is that alright[?]"

> Defendant e-mailed Sara, again asking how old she was.  In the midst of emails discussing possible times to meet up, Sara restated that she was 15 years old.  Defendant requested a full-body photo of Sara.  She refused, claiming that she did not like the way she looked.  A few minutes later, Defendant wrote to Sara, "sugar, i am kind of scared if you are just 15, they will put me under the jail."  Defendant and Sara agreed to keep their planned rendezvous a secret, and Sara told Defendant the neighborhood she lived in.  Defendant renewed his request for a full-body photo, but Sara refused.  The conversation ended.

> Again posing as Sara, Officer Morton posted a second Craigslist ad on November 2, 2013.  The ad, titled "halloween was lame – w4m," stated "My Halloween was so lame. now my weekend and this week just got boring before it even like starts.  There aint nothing to do or anyone who wants to do anything.  Bored."  Eleven days later, Defendant replied to the ad, "i want to make love to you"; he also provided his phone number.

Defendant and Sara exchanged e-mails.  Defendant realized that Sara was the same 15-year-old girl he had been e-mailing in July.  Defendant asked if he could visit Sara at her apartment.  Citing her mother's presence, Sara declined, but suggested that they meet over the weekend instead.

The two did not communicate for more than a week.  Defendant then reinitiated the conversation.  Sara provided her cell phone number and Defendant called her.  [footnote: Officer Morton's female colleague pretended to be Sara during the phone call.]  After the call, Sara e-mailed Defendant her address and Defendant replied, "I AM MY WAY."  Police detained Defendant when he arrived at the address Sara provided, and he was later arrested.

Defendant was indicted on one count of violating 18 U.S.C. § 2422(b).  Specifically, the indictment charged that Defendant had attempted to persuade an individual whom he believed to be a minor to engage in sexual activity, which, had it occurred, could have resulted in state criminal charges against Defendant under Alabama Code § 13A-6-62 (second-degree rape), § 13A-6-64 (second-degree sodomy), or § 13A-6-67 (second-degree sexual abuse).

Doc. 72 at 3-5.

Later in the opinion, when opining on a jury instruction claim, the circuit court

further observed:

There is no dispute that Defendant arranged for a meeting with someone he thought to be a minor girl, [footnote:  At one point in his e-mail conversation with Sara, Defendant acknowledged his concern that he might be put "under the jail" given Sara's age.  That concern, however, did not slow him down when Sara finally gave him her address.  Receiving that information, Defendant responded, "I AM MY WAY," and immediately scurried to this address to meet with Sara, where he was arrested.] and that he did so for the purpose of persuading her to allow him to "make love" to her.

. . .

. . . Defendant clearly intended to persuade a minor to engage in sexual activity.  We know this because he stated repeatedly that he wanted to

> make love to the young girl and he was arrested when he arrived at her apartment for their liaison arranged for just this purpose.
>                                      . . .
> Through his e-mail communications, Defendant had indicated to Sara that he wanted to meet her so that he could make love to her.  Finally, a meeting was set up for that purpose at Sara's home.  Defendant then took a substantial step to further this attempt by traveling to Sara's apartment, where he was arrested.

*Id.* at 15, 18-19, 25.

Beyond the facts found by the circuit court, the trial record itself contained additional facts about Jockisch's confession at the time of his arrest.  After being detained and *Mirandized*, Jockisch gave a statement to the officer.  Among other things, he admitted that he communicated with Sara via e-mail in response to her Craigslist ads; Sara repeatedly told him that she was 15 years old; he "made a mistake" and "never should have done this" because "I've been married 48 years. . ."; and he told Sara "I'd love to make love to you."  Doc. 60 at 60-89.  Despite that, Jockisch claimed that he traveled to Sara's apartment only because he wanted "to see what this girl looked like." *Id.* at 88; *see also id.* at 81, 89.[2]

Thus, Jockisch's self-serving and vague suggestions that, for example, he is "actually innocent" and he "assumed" that Sara was of legal age, is at odds with the

---

[2] After being arrested and released, Jockisch gave a recorded interview to a local news station. *Id.* at 94.  During the interview, Jockisch claimed he met Sara at her apartment to "help" her and "get that girl off of Craigslist" because "there's dangerous people out there"; he did not initiate the topic of sex during his e-mail communications with Sara; he once said to Sara that he "would like to make love," but that was only to determine if that was the intent behind Sara's Craigslist ads; and he did not meet Sara for the purpose of sex because he was impotent and could not have sex. *Id.* at 95-102.

actual trial evidence in his case.[3]   And more to the point, he offers no particular,

credible, supportable, admissible, and available "facts" now that (if presented by his

counsel) necessarily would have undermined the verdict.   Not only is his claim of

ineffective assistance of counsel in this regard impermissibly vague and conclusory, he

cannot establish *Strickland* prejudice because of the overwhelming evidence against him.

"It is well-settled that the district court is not required to grant an evidentiary hearing

when the defendant's claims are affirmatively contradicted by the record evidence, nor

is a hearing required if the claims are grounded upon generalizations that are

unsupported by the record evidence." *Rosin v. United States*, 786 F.3d 873, 78 (11th Cir.),

*cert. denied*, 136 S.Ct. 429 (2015).   *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.), *cert.*

*denied*, 502 U.S. 1105 (1992) (no hearing required where there "are merely conclusory

allegations unsupported by specifics or contentions that in the face of the record are

wholly incredible."). And in *Strickland*, the Supreme Court instructed that, "a verdict or

conclusion only weakly supported by the record is more likely to have been affected by

errors than one with overwhelming record support." *Id.* at 696.   *See, e.g., United States v.*

---

[3] Jockisch comes nowhere near demonstrating a miscarriage of justice based on "actual innocence," which requires that he come forward with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," which establishes that "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir.), *cert. denied*, 535 U.S. 926 (2002) (The exception is "exceedingly narrow in scope" as it requires proof of actual innocence, not mere legal innocence).

*Hatcher*, 541 F.App'x 951, 953 (11th Cir. 2013) (unpub.) (in rejecting claim that counsel did not do enough to challenge the trial evidence: "Hatcher's claim of ineffective assistance of counsel necessarily fails because, even assuming that defense counsel's performance was deficient, he cannot demonstrate prejudice in light of the overwhelming evidence of guilt presented at trial" as there was no "reasonable probability that the result of his trial would have been different. . . ."); *United States v. Andrews*, 933 F.2d 1312, 1327 (11th Cir. 1992) ("The evidence of Sharp's guilt at trial was overwhelming" and "[w]e thus conclude that even had the witness' testimony been presented to the jury, the verdict would have remained the same.").

Similarly, Jockisch cites to no law to support his suggestion that, legally, he could not have been convicted under § 2244(b).  In its opinion, the circuit court rejected Jockisch's counseled claim that his jury instructions were improper.  *See generally* Doc. 72.  Indeed, the jury was instructed based upon accurate statements of the law as to the essential elements of a § 2422(b) offense, that the jury must find that Jockisch believed Sara to be "less than 18 years of age," that a "facility or means of interstate commerce" was used to carry out the crime, and that if consummated the act would have violated one or more statutes under Alabama law.  Doc. 60 at 238.  The jury was also properly instructed that "'knowingly' as it is used in the indictment or in these instructions means that an act was done voluntarily and intentionally and not because of accident or mistake." *Id.* at 240.  Jockisch does not show otherwise.

The trial record reflects that Jockisch's counsel, for his part, did as much as he reasonably could be expected to do, considering how little he had to work with.  In fact, repeatedly during trial his counsel made the same point to the jury that Jockisch raises now – that counsel should have done a better job of convincing the jury that he "did in fact end the conversation with the alleged girl after discovering that she was only 15" and later "assumed that the fictitious girl had turned 16. . . ."  *Id.* at 5-6 (and also "believed" that the girl was "the age of consent" in Alabama).  *See, e.g., id.* at 29 (opening statement: "And as far as he knows, this is some young 18-, 19-, 20-year old woman on this thing."; and he was tricked by law enforcement: "She slips into general conversation" that "by the way I'm 15."); *id.* at 113, 116 (during lengthy and thorough cross-examination of undercover officer: "Now, if you or somebody clicked on her ad, wouldn't it be logical to assume that you would believe that that person is a woman, that she's over 18, and she's interested in a casual sexual encounter?" . . . "You don't think she's like enticing him a little bit?"); *id.* at 220-21, 226 (closing argument: ". . .it's a restricted site for people over 18. . . ." . . . "And how can you prove intent without getting into someone's head?" . . . "He wasn't going over there to have sex.").  Trial counsel is not ineffective for failing to offer cumulative evidence.  *See, e.g, Cullen v. Pinholster*, 563 U.S. 170, 199 (2011) (evidence "largely duplicating" evidence already admitted insufficient to establish prejudice); *Rose v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011) ("[A] petitioner cannot satisfy the prejudice prong of the *Strickland* test with

evidence that is merely cumulative of evidence already presented at trial."); *Rhode v. Hall*, 582 F.3d 1273, 1287 (11ᵗʰ Cir.), *cert. denied*, 560 U.S. 958 (2010) (no prejudice as "[c]ounsel is not required to present cumulative evidence.").

For these various reasons, Jockisch's first ground is due to be denied.

2.  <u>Ground Two: Failure to "Realize" Insufficient Facts to Convict</u>

In essence, this ground repeats ground one where Jockisch merely re-asserts that he was framed by law enforcement, that he believed the child to be of legal age, and that his counsel should have done more to contest the proof against him.  Doc. 80 at 8 (the undercover officer was "purporting to be over 18 years of age in his profile" . . . "Mr. Jockisch had succumbed to [the officer's] grooming. . . ."; the officer "was inadvertently pretending to be of legal age of 16 years old." . . . "Mr. Jockisch's belief of age was a critical element of the charged offense.").  For the same reasons explained as to ground one, this ground is also due to be denied.

3.  <u>Ground Three: "Obvious Error in Jurisdiction"</u>

Here, Jockisch claims that counsel failed to argue that this Court did not have jurisdiction over his case because he was not "using" interstate commerce "in any way" because "[n]one of Mr. Jockisch's use of e-mail, the internet, and/or his one phone call, standing alone, suffices to establish an interstate transmission because he and [the officer] were located within the boundaries of the same State (Alabama)."  *Id.* at 11. Rather, the law is clear that the Internet is a facility of interstate commerce.  In a

§ 2422(b) prosecution, "[e]ven if none of Faris' communications were routed over state lines, the internet and telephone he used to contact the undercover officer were still 'instrumentalities of interstate commerce.'" *United States v. Faris*, 583 F.3d 756, 759 (11th Cir. 2009) (citing *United States v. Ballinger,* 395 F.3d 1218, 1226 (11th Cir.), *cert. denied*, 546 U.S. 829 (2005) and *United States v. Lopez*, 514 U.S. 549, 558 (1995)).  Counsel is not ineffective for failing to raise a meritless claim.  *See, e.g., Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir.), *cert. denied*, 534 U.S. 1057 (2001).  For this reason, this ground is also due to be denied.

    4.  <u>Ground Four:  Appellate Counsel</u>

Finally, Jockisch asserts in conclusory fashion that his appellate counsel "failed to raise any meaningful errors found in the record."  Doc. 80 at 14.  The record reflects otherwise, as counsel raised a colorable jury instruction-based appeal claim concerning whether the jury was legally required to unanimously determine which of three Alabama statutes his conduct would have violated.  *See generally* Doc. 72.  That claim triggered a rare oral argument before the circuit court.  Jockisch does not present any specific appeal claim, much less any winning claim, that counsel otherwise should have raised. As such, this ground is also due to be denied.  *See Tejada*, 941 F.2d at 1559 (no hearing required where there "are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.").

In conclusion, there is nothing in this record, much less any asserted error by counsel, that would "undermine confidence in the outcome" of Jockisch's trial. *Strickland*, U.S. 466 at 695.  Because his claims have no merit, his § 2255 motion is due to be denied without a hearing.

Respectfully submitted,

RICHARD W. MOORE
UNITED STATES ATTORNEY
By:

s/ Steve Butler
Steve Butler
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama  36602
Telephone:  (251) 415-7102
Fax:  (251) 441-5131

## CERTIFICATE OF SERVICE

I certify that, February 26, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically serve any counsel of record.

s/ Steve Butler
Steve Butler
Assistant United States Attorney

-13-